### LORENZO E. DOW v. STATE BANK OF SLEEPY EYE.[1]

January 23, 1903.

Nos. 13,266—(231).

### Partnership Agreement.

A written instrument construed, and *held* to be an executory agreement between five persons for the formation of a partnership in the future, and on a day specified therein.

### Same—Executory Contract.

Persons who have entered into a contract to become copartners at some future time, or upon the happening of some future contingency, do not become partners until the agreed time has arrived or the contingency has happened. The contract must be executed, and the partnership actually "launched," before the relation will arise. The test is, to ascertain from the terms of the agreement itself whether any time has to elapse or any act remains to be done before the right to share profits accrues, for, if there is, the parties will not be partners until such time has elapsed or the act has been performed.

### Implied Condition.

Where a person creates a charge or obligation upon himself by express contract, he will not be permitted to excuse himself therefrom by pleading an act of God rendering performance impracticable; but if, from the nature of the contract, it is apparent that the parties contracted on the basis of the continued existence of a given person or thing, a condition is implied that if the performance becomes impossible from the death of

[1] Reported in 93 N. W. 121.

the person, or by the perishing of the thing, performance of the contract is excused, and this implication arises in spite of the unqualified character of the promissory words.

## Death of Party to Contract.

The rule last above stated is applicable to an agreement wherein two or more persons agreed to form a partnership at a future time, and, prior to the time fixed, one of the parties dies. The agreement for a partnership is based upon the continuance of the life of each of the proposed partners, and is wholly annulled by the decease of either.

## Indorsement of Check after Drawer's Death.

On the day the executory agreement was entered into, as a guaranty of faithful performance, and on account of his subscription to the capital of the firm, Jensen, one of these five persons, deposited his check for $1,000, payable to the order of the contemplated partnership, under its proposed firm name, to be held in trust by one of his associates; and in case he (Jensen) refused to proceed in accordance with the written agreement the amount thereof was to be distributed equally among such of his proposed associates as stood ready to perform. They also deposited $1,000 each in a bank under like conditions. Jensen died prior to December 1, the day specified in the agreement. *Held*, that after his death the check could not be properly indorsed or put in circulation, by his four associates, either by individual indorsement, or by indorsing the proposed firm name on the back thereof, and that this plaintiff could not become a bona fide holder of such check by means of or through such indorsements.

Action in the district court for Brown county to recover $1,004.80, and interest, upon a bank check certified by defendant. The case was tried before Webber, J., who directed a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*Somerville & Olsen,* for appellant.

The partnership contemplated by Exhibit A was not to commence until December 1. It was clearly contingent upon the payment of the partnership capital on or before December 1 and was executory only. Reboul v. Chalker, 27 Conn. 114; 1 Lindley, Part. 63; 22 Am. & Eng. Enc. (2d Ed.) 52.

No partnership having been consummated, there was not on December 1, or at any time, any Whiteside, Farrell & Co., to whom the check was or could be delivered. A check or negotiable instrument which has never been delivered to the payee or put in circulation by him does not become commercial paper. Hall v. Wilson, 16 Barb. 548; Burson v. Huntington, 21 Mich. 415; Cline v. Guthrie, 42 Ind. 227; Palmer v. Poor, 121 Ind. 135; Stein v. Passmore, 25 Minn. 256.

A person taking a note indorsed with the payee's name by one having no authority to indorse takes only an equitable title. 4 Am. & Eng. Enc. (2d Ed.) 252; Mead v. Young, 4 T. R. 28; Lancaster v. Baltzell, 7 Gill & J. 468; Terry v. Allis, 16 Wis. 479; 4 Am. & Eng. Enc. (2d Ed.) 334. And such equitable transfer is subject to all defenses. 4 Am. & Eng. Enc (2d Ed.) 253; First National v. Henry, 156 Ind. 1; Lebcher v. Lambert, 23 Utah, 1.

*Webber & Lees*, for respondent.

The bank by certifying to a check becomes primarily liable to the holder, and if the bank itself has no valid defense the holder must recover. Equities between any of the prior holders cannot intervene as against a bona fide holder for value. He deals with the paper alone, looking to the bank as the principal debtor, and often the only reliable debtor, and it can be discharged only by payment, or the statute of limitations. By certifying a check the bank ceases to be a debtor of the depositor, assuming instead an obligation to the holder of the check. The certification is equivalent to an acceptance. 2 Randolph, Com. Paper, §§ 642–645; 1 Edwards, Bills & Notes (3d Ed.) § 565; 2 Daniel, Neg. Inst. (5th Ed.) §§ 1601–1603; Farmers v. Butchers, 28 N. Y. 428; Nolan v. Bank, 67 Barb. 24; Meads v. Merchants, 25 N. Y. 143; Mussey v. Eagle, 9 Metc. (Mass.) 309; Willets v. Phoenix, 2 Duer, 121; Girard v. Bank, 39 Pa. St. 507; Thomas v. Bank, 82 N. Y. 1; First Nat. Bank of Washington v. Whitman, 94 U. S. 343; Morse, Banks & Banking, §§ 307–315; Merchants v. Bank, 7 Daly, 137; Merchants Bank v. State Bank, 10 Wall. 648; 5 Cyc. Law & Proc. 534–540, and notes; Freund v. Importers, 12 Hun, 537; Bickford v. First National, 42 Ill. 238, 89 Am. Dec. 436, and note.

It is no concern of the defendant what the consideration was between Jensen and Whiteside, Farrell & Co., or what the equities between them might be. It is enough for defendant to know, and all it has a right to know, that plaintiff is the party in legal interest. Vanstrum v. Liljengren, 37 Minn. 191; Anderson v. Reardon, 46 Minn. 185; Elmquist v. Markoe, 45 Minn. 305; First National Bank v. Whitman, 94 U. S. 343, 346. Neither can the bank repudiate its contract to pay, on the ground of failure of consideration, or that it was obtained by fraud, or other equitable defenses existing in favor of the drawer as against the payee. Vanstrum v. Liljengren, supra; Nassau v. Broadway, 54 Barb. 236; Merchants v. Bank, supra.

COLLINS, J.

March 18, 1901, five persons (Whiteside, Farrell, Spence, and Reichenthal, of the city of Chicago, and L. P. Jensen, of Sleepy Eye, in the state of Minnesota) entered into a written agreement in which they stipulated that they "have agreed and do hereby mutually agree to form a limited partnership" to engage in a specified line of business in Chicago "for the term of five years, commencing with December 1, 1901, under the firm name and style of Whiteside, Farrell & Company." Each of the four men first mentioned was to contribute a certain sum of money to the capital fund, to be paid in full on or before December 1, and were to be general partners. Jensen was to be a special partner, in accordance with the laws of Illinois, contributing $10,000 towards the capital,—two-fifths of the whole,—which sum was also to be paid on or before December 1. It was recited that each of the parties, except Jensen, had deposited in bank, and in the name of the firm, on account of his subscription to the capital, the sum of $1,000, and that Jensen had deposited with Farrell his duly certified check for the same amount on account of his subscription, and that the deposit made by each of these parties was "as a guaranty of the faithful performance on his part of this agreement." This check was made payable to the order of Whiteside, Farrell & Co., the agreed firm name, and was to be held by Farrell personally, instead of being deposited in the bank. It was covenanted that on

the failure on the part of any of the persons named to pay over the balance of his agreed contribution on or before December 1, "and to proceed with and to engage in the partnership business herein, in this agreement provided for, as therein provided, then the" amount of the deposit of the party in default, with all interest, should be forfeited to such of the other parties as might be ready and willing to pay and to proceed with the partnership business; the amount forfeited to be divided equally between the nondefaulting parties. All interest earned on the amounts deposited by each of the persons not in default was to be paid over to them individually. It was also provided that:

"Nothing contained in this paragraph shall be construed as depriving any of the parties to this agreement of any rights which they otherwise have at law or in equity for damages, beyond such sum so forfeited, for a failure on the part of any party or parties hereto to carry out and perform this contract."

There were other provisions as to a division of the profits, for a division of the work, the management of the business, the authority of the partners, for the submission of all questions of dispute between them, prohibiting the general partners from engaging in any other business after December 1, during the five years, and also that,

"In case of the death of any of the general partners or the special partner, such death shall not work a dissolution of the firm, but the surviving general partners shall continue the business in such case for the full time and in the manner provided for herein; and in such case the heirs and legal representatives of such deceased general partner shall stand in the same relation to such partnership as a special partner would, subject to no greater liabilities and entitled to the same relative rights."

The check bore date of March 13, a few days prior to the execution of the contract in Chicago, and evidently was made in contemplation of it. On the day of its date it was certified as good by the duly-authorized officer of the bank on which it was drawn, at Jensen's request. Before anything further was done under the agreement, and on October 9, 1901, Jensen died.

From the testimony it appears that on December 1 Farrell delivered the check to Whiteside, Spence, Reichenthal, and himself, who, it seems, were then acting as a partnership under the firm name mentioned in the check and in the agreement. On December 17 one of these four men, by authority of his associates, placed this firm name on the back of the check, and·at the same time each one of the four indorsed the check individually to their attorneys in Chicago,—Heckman, Elsdon & Shaw. It is claimed that on the same day the check was disposed of by Heckman to this plaintiff for value, and that the latter was a bona fide purchaser thereof. At this time it was indorsed by this firm of attorneys and by Wallace Heckman individually,—one of the·firm.

At the trial a verdict for the plaintiff was ordered and returned for the full amount of the check, and this appeal is from a denial of defendant's motion, in the alternative, for judgment notwithstanding the verdict or for a new trial.

The first question to which attention should be given is the agreement made between the five persons, and, as before stated, bearing date and actually executed in Chicago on March 18. If that was nothing but an executory agreement to enter into a partnership upon December 1, following (an inchoate partnership contract), the case must be disposed of upon the ground that the plaintiff was not and could not be a bona fide holder (a purchaser of the check free from all equities and defenses), because it was never properly indorsed or put in circulation by the payee. If the partnership had been formed as stipulated, then the right of the firm to indorse the check and convert the proceeds into capital funds would have been undoubted. If Jensen had lived, but had refused to proceed, the right of his proposed associates to indorse and put the check in circulation would have been implied. Under the agreement the check would have been forfeited to such of the other parties as stood ready to perform.

But we are clearly of the opinion that Exhibit A [the partnership agreement] was an executory contract entered into on the basis of the continuance of the life of each of the parties thereto. In itself it did not create a partnership, and the persons signing it never became partners, because performance became impossible

when Jensen died. Such an event was not provided for in the agreement, and when it occurred the agreement was at once annulled as to all parties. The clause we have quoted, relating to the decease of one of the partners, was not applicable to a death occurring before a partnership had actually commenced.

It is elementary that partnership relations must always be assumed by mutual consent and unanimously, and not otherwise, for they are strictly voluntary and personal. A third person cannot be introduced into a firm as a partner without or against the consent of a single member. Jensen's legal representatives or his heirs at law could not take his place, and force themselves upon the other parties to the agreement. Either one of the survivors could refuse to proceed or to furnish his share of the capital, and could demand a return of the deposit, because Jensen had deceased and could not become a partner; nor could any one else, except by unanimous consent. His estate could not be compelled to pay the amount agreed by him to be paid toward the capital funds. It is plain that the other parties to the contract could not and should not be obliged to go into the business with a capital of $15,000, when it had been agreed that it should be $25,000, of which two-fifths ($10,000) was to be contributed by Jensen. And it is obvious from some of the provisions of the agreement that there was no intention to form a present partnership.

But if we should hold that a partnership was actually entered into in March, when the contract was signed, every person named therein could be compelled to contribute the amount of capital subscribed by him. And Jensen's estate would not be relieved of pecuniary obligation when the check was paid, for there was no agreement that if the check was paid, or if damages were recovered in case of nonfulfilment, Jensen was to be relieved from his written obligation to contribute to the capital. The agreement was executory, and there was no partnership in præsenti. Persons who have entered into a contract to become partners at some future time, or upon the happening of some future contingency, do not become partners until the agreed time has arrived, or the contingency has happened. An executory contract does not create a partnership. The contract must be executed,

and the partnership actually "launched," before the relation will arise.

Even after the arrival of the stipulated time the parties are not necessarily partners, and in fact they are not partners unless the partnership is launched. Any act, the performance of which is made a condition precedent to the formation of the partnership, must be performed, before the partnership will be held to exist. The test is, to ascertain from the terms of the agreement itself whether any time has to elapse or any act remains to be done before the right to share profits accrues, for if there is, the parties will not be partners until such time has elapsed or the act has been performed. Shumaker, Part. 78, et seq.

These rules are laid down in every text-book and in all cases where the subject has been discussed. We have found none in which it has been held that an agreement for a partnership to commence at a specified future day created, alone and of itself, a present partnership, even as to third parties. More than this, not one of the provisions of this agreement indicates an intent to create a partnership in præsenti, and all are opposed to that idea. For illustration, the clause which provided that in case of default by one or more of the parties the amount deposited by him or them should be divided among those who stood ready to fulfil; the amount was not to become an asset of the firm; also the clause that gave to each of the parties whatever interest his deposit might earn before December 1, and the clause that gave to each of the general partners full liberty to engage in other business until that day. It is obvious that goods could not have been purchased, nor could any other form of obligation have been incurred, in the firm name, and a recovery had, as against the partnership, by any person who knew the contents of, and was obliged to rely upon the agreement Exhibit A.

The death of Jensen annulled the agreement, because it was an act of God which rendered a partnership impossible. It is an established rule of law that, where a person creates a charge or obligation upon himself by express contract, he will not be permitted to excuse himself therefrom by pleading an act of God rendering performance impracticable; but it is equally as well

settled that where a contract is entered into, of a continuing character, or to be performed at a future time, dependent upon the continued existence of a particular person or thing, or the continuing ability of the obligor to perform, subsequent death, destruction, or disability will excuse the obligor from compliance with the terms of the contract. A condition is implied that if the performance becomes impossible, from the death of the person, or by the perishing of the thing, performance of the contract is excused, and this implication arises in spite of the unqualified character of the promissory words. 1 Am. & Eng. Enc. (2d Ed.) 590, and cases cited.

As the firm of Whiteside, Farrell & Co., provided for in the agreement, and the payee of the check, never came into existence, the paper was never properly indorsed. The partnership was never launched, and the legal title to the check did not pass to his proposed associates when Jensen died. It follows that plaintiff did not derive title, and could not have been a bona fide purchaser, through the indorsements made. One of the risks assumed by the purchaser of negotiable paper is that the indorsements thereon are genuine and have been made by the payee or by his authority, and this risk was assumed by plaintiff when he took the check. It is hardly necessary to state that an indorsement by persons who do not hold legal title to a check will not transfer that title so as to permit an indorsee to sue and recover upon the same as a bona fide holder; and it ought not to be necessary to say that a firm composed of only four of the five persons named in the agreement, although adopting the firm name agreed upon, had no more right to indorse the check in question than would a firm composed of entire strangers, or with an entirely different firm name. Whiteside, Farrell, Spence, and Reichenthal could not become the firm named as payee of the check, or become such payee, by appropriating the proposed firm name. But upon the oral argument it was contended that the answer admitted an actual, consummated partnership, and that it consisted of the five men mentioned in the agreement, associated under the firm name of Whiteside, Farrell & Co.,—in other words, that it stood conceded that the agreement constituted a partnership in præsenti.

But the whole transaction was set out in the answer, and it was distinctly alleged that it was an agreement to form a partnership in the future; that, because of the death of Jensen, fulfilment of the agreement became impossible; and that the partnership could not be, and never was, formed. Taking the answer as a whole, it is plain that no such admission was made.

We therefore hold that by the act of God the agreement to become partners on December 1 was annulled and abrogated; that all of the parties to the contract were then and thereby relieved from all liability on account of the deposit of money or check; that the firm which actually existed after December 1 was without authority to indorse the paper; that it could not be lawfully transferred by the indorsement of the four survivors to the agreement; that the plaintiff could not acquire title to it as a bona fide purchaser in the absence of the proper indorsement; that he took it from the attorneys subject to all equities and defenses; and that the court below was in error when it directed a verdict for the plaintiff. This conclusion makes it unnecessary to consider the other questions presented by the appeal.

Order reversed. Upon remittitur to the court below, the verdict will be set aside, and judgment entered for the defendant.