**CENTRAL BAPTIST THEOLOGICAL SEMINARY, d/b/a WCTS–FM, Appellant,**

v.

**ENTERTAINMENT COMMUNICATIONS, INC., Respondent.**

No. C6–84–738.

Court of Appeals of Minnesota.

Oct. 30, 1984.

Roger J. Magnuson, Joel A. Flom, Dorsey & Whitney, Minneapolis, for appellant.

Roger A. Johnson, Thompson & Klaverkamp, P.A., Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

Central Baptist Theological Seminary, d/b/a WCTS–FM (the Seminary), brought suit, claiming that Entertainment Communications, Inc., a/k/a Entercom, breached a contractual duty to the Seminary to provide

space on an FM radio tower for 99 years. The Seminary submitted a summary judgment motion, which was denied. Entercom then filed a summary judgment motion, which was granted by a different judge. The Seminary appeals from the trial court's determination that (1) because an act of God (destruction of the tower by a windstorm) rendered performance impossible, Entercom was excused from its contractual duty to provide tower space, and (2) neither party was entitled to restitution on the basis of unjust enrichment because both were equally damaged by the tower's destruction. We affirm in part, reverse in part, and remand.

## FACTS

The Seminary, a nonprofit corporation, operates a nonprofit FM radio station under the call letters WCTS–FM. Entercom, a Minnesota corporation, owns and operates radio stations including, among others, WAYL. In 1969 Entercom merged with Contemporary Radio, Inc., and assumed all of Contemporary Radio's liabilities and contractual obligations, including those from a 1963 contract between the Seminary and Contemporary Radio.

Under the contract the Seminary had agreed to construct a 450-foot FM radio broadcast tower and to sell to Contemporary Radio both the tower and the 1.7 acres on which it was built for $26,000 plus the cost of construction. Contemporary Radio agreed to "provide space on said FM Radio Tower" for the Seminary's antenna "for a period of 99 years without cost to the Seminary." In addition, Contemporary Radio agreed to provide space in a building on the property for the Seminary's transmitter and associated equipment, and the Seminary agreed to give Contemporary Radio an·easement on the Seminary's adjacent property for tower anchor space.

The Seminary constructed the tower and conveyed the property. The parties used the tower for 17 years until August 7, 1980, when a windstorm destroyed it. Entercom investigated replacing the tower but abandoned the effort when it encoun-

tered local regulation problems and increased costs. Since 1980 the Seminary has broadcast on its own property from a temporary antenna which has a reduced broadcast radius and is subject to interference in downtown Minneapolis from the IDS tower.

## ISSUES

1. Does impossibility excuse further performance by Entercom under the contract?

2. Did the trial court correctly determine that the Seminary is not entitled to any restitution on the basis of unjust enrichment?

## DISCUSSION

### I

■ Under the contract Entercom was to "provide space on said FM Radio Tower * * * for a period of 99 years without cost to the Seminary." The contract is silent as to any duty to rebuild the tower in the event of destruction. The Seminary argues that Entercom has a duty under this contractual language to provide space on an FM radio tower located on the described property for a period of 99 years. The express contract language ("said" tower), however, limits Entercom's duty to providing space on the specifically described tow-·er built and conveyed under the contract. The language does not support so broad a duty as to require Entercom to guarantee a functional radio tower on that property for 99 years. Had the parties so intended, they could have made this broad duty explicit.

The parties agree that the tower was destroyed by a windstorm, through no fault of either party. The Minnesota Supreme Court has recognized impossibility of performance as a defense to breach of contract:

> [W]here a contract is entered into, of a continuing character, or to be performed at a future time, dependent upon the continued existence of a particular * * * thing, * * * subsequent * * * destruc-

tion * * * will excuse the obligor from compliance with the terms of the contract. A condition is implied that if the performance becomes impossible * * * by the perishing of the thing, performance of the contract is excused, and this implication arises in spite of the unqualified character of the promissory words.

*Dow v. State Bank of Sleepy Eye*, 88 Minn. 355, 363, 93 N.W. 121, 123 (1903).

*Dow* involved an executory agreement to enter into a partnership that was annulled on the death of one of the prospective partners, "an act of God which rendered a partnership impossible." *Id.* at 362, 93 N.W. at 123. *See also Smith v. Zuckman*, 203 Minn. 535, 282 N.W. 269 (1938) (personal service contract obligations discharged at death of one of the parties); *Merritt v. Haas*, 113 Minn. 219, 129 N.W. 379 (1911) (party obligated to pay premium on a particular insurance policy released from obligation where insurance company ceased to exist); *Restatement (Second) of Contracts* § 263 (1979).

Under the contract, Entercom was obligated to provide space for an additional 82 years on a radio tower that no longer existed. As the trial court noted in its memorandum denying the Seminary's motion for summary judgment:

> The tempest, for instance, may destroy that which must exist if performance of the covenant is to remain possible, and it would seem evident in such a case that it was not within the contemplation of the parties that the maker of the covenant should answer in damages for what he could in no wise control.

*Shubrick v. Salmond*, 97 Eng.Rep. 1022 (K.B.1765).

■ Even if Entercom had a duty to replace the tower, an attempt to do so would likely prove to be an expensive exercise in futility. New Brighton has changed its zoning ordinance to require setbacks equal to or greater than the height of proposed structures, which would be impossible on property of the size conveyed under this contract. *See* New Brighton, Minn., Code, ch. IV–11, § 4–600(b)(1). In addition, the prior tower fell on a residential apartment complex. It is not likely that Entercom could obtain a special use permit in light of zoning and safety considerations. Finally, building costs have increased substantially (six or seven times) since the tower was originally built.

## II

■ Because the tower's fall rendered further performance by Entercom impossible, the Seminary's claim for rescission of the contract and restitution on the basis of unjust enrichment must be examined. Entercom alleges that the Seminary did not properly plead a cause of action for restitution. The Seminary's complaint, however, requesting specific performance or, in the alternative, reconveyance of the land and money damages was broad enough to encompass a restitution claim.

■ When a party is excused by impossibility from rendering an agreed-upon exchange, the party can "get judgment for the value of what he has rendered, less the value of what he has received, unless what he has rendered can be and is returned to him in specie within a reasonable time." *Restatement (Second) of Contracts* § 468 (1981). The trial court dismissed the Seminary's claim for restitution on the basis of unjust enrichment, stating that Entercom had "substantially performed" under the contract and that "all of the evidence indicates that both parties have been equally damaged by the tower's destruction."

■ Summary judgment is appropriate only if the evidence presented creates no genuine issue as to any material fact and either party is entitled to a judgment as a matter of law. Minn.R.Civ.P. 56.03. The trial court improperly determined a number of disputed material facts in making its decision. It determined that the Seminary received fair market value for the land. The $26,000 listed as payment for the property, however, was not part of an independent transaction but was part of a complex contractual arrangement. The trial court had no valid basis for assuming that fair

market value was received. The trial court also determined that Entercom had "substantially performed" under the contract. The Seminary refutes this with its affidavit valuing the remaining 82 years of the lease at close to $3 million. In addition, questions remain concerning the extent to which Entercom may have been compensated for its loss through insurance proceeds and concerning an allegation by the Seminary that it did not receive a number of payments for the real property. A claim for the payments, even if barred by the statute of limitations, is nevertheless relevant in the total determination of the Seminary's claim for restitution.

The Seminary provided evidence in support of its claim that Entercom was unjustly enriched by receipt of title to the land free of most of its obligations under the contract, while the Seminary had fully performed. The trial court's explicit weighing and balancing of disputed evidence in dismissing the Seminary's claim was inappropriate in a summary judgment context.

### DECISION

The trial court correctly determined that further performance is excused on the ground that it is impossible as a matter of law. The trial court erred, however, in finding, despite the existence of disputed material facts, that Entercom had not been unjustly enriched.

Affirmed in part, reversed in part, and remanded for trial of the remaining issues.