ants' right to any equitable relief has been barred by delay or laches.

A decree will be advised dismissing the bill, but in view of the fact that Mrs. Schmidt did in her petition for injunction set up a claim as mortgagee which complainants were justified in probing by the bill they have filed, no costs will be allowed.

---

THE GRAND COURT FORESTERS OF AMERICA, STATE OF NEW JERSEY,

*v.*

COURT CAVOUR, No. 133, FORESTERS OF AMERICA, et al.

[Decided July 14th, 1913.]

1. Where a subordinate branch of a beneficial association was incorporated under the state laws, its so-called constitution and laws by which it recognized the authority of the supreme court of the order, &c., and agreed to abide by and conform to its general laws, &c., from a legal standpoint could be regarded as nothing more than the corporation's by-laws.

2. Where a subordinate court of a beneficial association was cited by the grand court to show cause why it should not be suspended or dissolved for improper conduct, and for neglecting or refusing to conform to the rituals, &c., it could only be subject to punishment after adjudication of guilt and a finding that the charges had been sustained by the evidence.

3. An incorporated subordinate court of a beneficial association adopted by-laws acknowledging its allegiance to the supreme body, but on the subordinate court devolved the duty of administering the funds collected for the benefit of its members. One of the grand court's by-laws provided that, should any subordinate court become dissolved or suspended by operation of law or otherwise, or should be expelled or should secede from the order, all property, money, goods and effects should vest in and be delivered to the grand lodge on demand. It did not provide, however, that the grand court should take the money and other property of the dissolved court and apply them to the payment of its debts or for other uses for which they had been contributed.—*Held*, that the grand court of the order had no jurisdiction to dissolve the subordinate

court and recover its funds and property and administer the fund, whether the subordinate court should be considered as a voluntary association or a corporation.

4. A forfeiture will not be enforced in equity as against a subordinate court of a beneficial association, which was incorporated under the state laws, where the enforcement of the forfeiture will incapacitate the corporation from performing the very duty for which it has been constituted.

---

On final hearing.

*Mr. Philip J. Schotland,* for the complainant.

*Mr. Anthony R. Finelli,* for the defendants.

STEVENS, V. C.

This bill prays that Court Cavour, a beneficial society, allied to the Foresters of America, may turn over to the complainant the funds and property heretofore belonging to it, on the ground that Court Cavour has been dissolved and that under the constitution and by-laws of the Foresters, the title to the property has vested in complainant.

The Foresters of America consist of a supreme court or society, grand courts and subordinate courts. It is enough for the understanding of the case to say that the subordinate courts are the basic organizations; that where there are ten or more of them in any one state they elect delegates who meet and form a grand court, and that the grand courts of different states, thus composed, likewise in their turn elect delegates to the supreme court, which with its officers, present and past, are the head of the order. To the supreme court is given the prerogative of granting charters, so called, or dispensations for the formation of subordinate courts.

Each candidate for admission to a subordinate court, in his written application declares, among other things, that he will conform to and abide by all the rules of the court and of the order now in force or hereafter to be made, or submit to the penalties therein contained.

The foundation of the society is declared, in the constitution of the supreme court, to be

"upon the broad principle of benevolence and is established to provide re-
lief in sickness and distress, and burial at death, and to inspire its mem-
bers with the elevating influence and of a proper recognition of the stern
realities and responsibilities of life."

The supreme court, the grand court for the State of New
Jersey and Court Cavour, have all become incorporated under
the New Jersey act of legislature entitled "An act to incorporate
associations not for pecuniary profit." The certificate of incor-
poration of Court Cavour, dated February 16th, 1904, antedates
that of the supreme court, and that of the present certificate of
incorporation of the grand court, which is dated May 8th, 1906.

The certificate of incorporation of Court Cavour, stating its
object to be one of benevolence, uses the language of the above-
quoted declaration of the supreme court. It does not make any
reference to the order of which it is or was a constituent part.
Its so-called constitution and laws adopted in July, 1909, which
from a legal standpoint can be nothing more than its by-laws,
declare (section 5) that it recognizes the authority of the su-
preme court of the order and the authority of the grand court
of the State of New Jersey, and that it will abide by, obey, agree
to and conform with the general laws of the order and of the
grand court laws of the State of New Jersey as now in force, or
as they may be hereafter enacted or amended.

Among the so-called supreme court laws is the following:

"Section 215. Any grand or subordinate court found guilty after due
notice and hearing of any of the charges hereinafter set forth may be
suspended for a period not exceeding two years, dissolved or expelled.
If dissolved or expelled, its charter, dispensation, rituals, money, books,
paper and all other property, real or personal, shall be forfeited to the
supreme court, or the respective grand court. * * * The executive
council of each grand court shall hear and decide all charges preferred
against subordinate courts within its jurisdiction:

"A. For improper conduct.

"B. For neglecting or refusing to conform to the rituals, laws, cere-
monies, enactments or resolutions of the supreme court, grand courts or
executive council thereof."

On September 28th, 1912, the grand chief ranger addressed
to the financial secretary of Court Cavour a written communica-
tion, citing him to appear before the executive council of the

grand court on October 12th, 1912, at eight P. M., to show cause why Court Cavour should not be suspended or dissolved for violating the general laws, section No. 215, as follows: A. For improper conduct. B. For neglecting or refusing to conform to the rituals, laws, ceremonies, &c.; stating that it was by order of the executive council. This notice was communicated to the members of the court, or a large majority of them, and a trial was had at the time named, at which the court was represented by counsel. Decision was reserved until November 9th, 1912, at which time the following resolution was passed by the members of the executive council, who had heard the evidence:

"Whereas, Court Cavour, No. 133, of the Foresters of America, located at Newark, New Jersey, was suspended on the twenty-eighth day of September, 1912, for failure to comply with certain regulations of the order, and the said court was cited to show cause why it should not be dissolved, as a subordinate court of the order and the hearing was set for Saturday evening, October 12th, 1912, in the office of the grand secretary, No. 275 Grove street, Jersey City, New Jersey, which trial proceeded by the introduction of and taking of said evidence; and

"Whereas, section 215 of the general laws of the order, edition of 1911, vests the executive council with full, ample and sufficient authority within the premises; and

"Whereas, a fair and impartial trial was conducted on the date herein set forth and at the place above mentioned, the said Court Cavour, No. 133, of the Foresters of America and executive council of the grand court of New Jersey, both being represented by counsel; and

"Whereas, we have carefully considered the testimony and all matters surrounding the case; therefore be it

"Resolved, that it is now the order of this executive council of the grand court of the State of New Jersey that the said Court Cavour, No. 133, of the Foresters of America, Newark, New Jersey, be and is hereby dissolved as a subordinate court of the grand court of New Jeresy, Foresters of America, and its charter, dispensation, rituals, money, books, papers and all other property, both real and personal, be and hereby is forfeited to the grand court of the State of New Jersey, Foresters of America; and be it further

"Resolved, that the grand secretary of the grand court of the State of New Jersey be and is hereby authorized and empowered, on behalf of the executive council, to take such steps as may be necessary to collect all property of Court Cavour not now in possession of the executive council of the grand court of New Jersey; and be it further

"Authorized to take such action as may be necessary to recover from the said dissolved Court Cavour, No. 133, of the Foresters of America, all money in the possession of the officers of said court or on deposit and secure the same for the executive council * * *."

This resolution is open to serious criticism. It begins with declaring that Court Cavour was suspended. The suspension proceedings appear in the evidence and do not warrant the declaration that the *court* was suspended. No suspension proceeding was taken against the court as such. Then the resolution says that the court was cited to show cause why it should not be *dissolved* as a subordinate court. It was not so cited, but was cited to show cause why it should not be *suspended* or *dissolved* for improper conduct and for neglecting or refusing to conform to the rituals, &c. And even this form of citation was not warranted by the section above quoted. Under it the court should have been notified that charges for improper conduct, &c., had been preferred and that it must answer them. The punishment was to follow only after adjudication of guilt—that is, after the council should have found that the charges were sustained by the evidence. Then, and then only, was the committee to determine whether the society should be suspended, dissolved or expelled.

In their resolutions the council do not find that the charges or any of them are true. They only declare what might be the consequence of such a finding, and that, too, not the necessary consequence. Having found the charges true, they would still have had to determine whether suspension, dissolution or expulsion was the appropriate remedy. It is as if a court of justice should adjudge that the alleged debtor's property should be sold, without having first adjudged that he owed a debt. Nothing is better settled than that a decree that adjudicates a matter not within the issue is a nullity. *Reynolds* v. *Stockton, 43 N. J. Eq. (16 Stew.) 211; 140 U. S. 254.* The proper issue, and the only issue warranted by section 215, was whether the court was guilty; and that the council has not passed upon. The complainant is confronted with this dilemma: If the citation did not call upon the defendant to answer a charge of improper conduct, &c., then it was not warranted by the laws of the order; if it, in substance, did, then the decree made did not pursue the issue. In either event it appears to afford a very slender foundation for the demand for the property sought to be recovered in this suit.

But there is another difficulty: In *State Council* v. *Enterprise Council, No. 6, 75 N. J. Eq. (5 Buch.) 245,* it was held

that under the laws of the order the state council had no authority to administer the trust fund created by the local council for the benefit of its members and no power to *dissolve* the local court, considered either as a voluntary association or as incorporated society. That seems to be the case here. Counsel for complainant sought to convince me, in a very elaborate argument, that the grand lodge was vested with authority to carry out the trusts or objects for which Court, Cavour was constituted, but after a careful examination of the various laws of the order, I fail to find any such authority. It is true that section 1 of article 18 of the grand court laws prescribes that

"should any subordinate court become, either by operation of law or otherwise, dissolved or be suspended, expelled or secede from the order, all property, money, goods and effects shall vest in and be delivered to the grand lodge upon demand being made therefor."

But it is not provided that it shall take the money and other property of the dissolved court and apply them as a separate fund for the payment of its debts or for the other uses for which they were contributed. As far as appears they go into the general fund of the grand court subject to be disposed of according to its rules.

Counsel refers to the testimony of Mr. Donnelly, the supreme secretary, who says that complainant is obliged under its laws to recognize the members of a defunct branch by giving them a clearance card to enable them to join another subordinate court of the order, and, during the life of the clearance card, pay the benefit which the member was entitled to from the defunct court. But assuming that the course thus indicated imposes no uncontracted for burden upon the applying member, and assuming further that members not in arrears can, on application, get such card, it is plain that the section relied upon (section 112, page 32 of Exhibit C-3) is not applicable. It provides that

"any member who voted with the minority against their court disbanding or seceding, or against their court being suspended or expelled (whatever that may mean) for non-compliance with the laws or decisions of the order, on satisfactory proof thereof, may still be recognized as members of the order."

This provision applies to a situation that has not here arisen. The question of disbanding or seceding was not brought before the society and no one voted either for or against it. It was the grand court that sought to dissolve it, not the subordinate court that sought to disband or secede. Counsel has not been able to refer me to any other provision, and, consequently, the case stands, in this regard, as it did in *State Council* v. *Enterprise Council, supra.*

The rationale of the situation is this: The right of the member is contractual. He has agreed that the fund contributed by himself and by the other members shall be managed and applied by the officers of the court to which he belongs. He has further agreed that on dissolution the property shall go to the grand court; but he has not agreed that, on the contingency that has happened, and while the local society, whether incorporated or not incorporated, exists, it shall be administered by the officers and agents of any other court. There has been no dissolution, first, because the judgment was unwarranted; second, because, if warranted, the grand court has no power to dissolve the local society. The court of errors and appeals expressly says: "The fact is that the word 'dissolution' is inapt to express any legal intent which the parties may have entertained, for, even in the case of an unincorporated association, it would be quite impossible for the state council to dissolve such a voluntary association as long as its members chose to continue together." The fund cannot, therefore, be given into the custody of those officers or agents without his consent, and in this case there has been no consent. The case is unlike *State Council* v. *Sharp, 38 N. J. Eq.* (*11 Stew.*) *24.* There, as pointed out by Mr. Justice Swayze in the case cited, the constitution itself provided that the amount received by the state council upon dissolution of the subordinate council (the local council had disbanded itself and returned its charter) should be appropriated for the assistance and support of the widows and orphans of members of the subordinate council, and that if there were no such widows and orphans, the amount should be invested and paid in case of reorganization to that council.

There are three particulars in which the case in hand differs

from *State Council* v. *Sharp*—*first,* the dissolution entailing forfeiture has not been adjudged according to the rules of the order; *second,* even in the event of disbandment or secession there is no provision that the fund shall be preserved intact and used for the payment of the debts or for the relief of the members of the subordinate court; *third,* Delaware council had disbanded itself and had therefore left the fund without any trustee to administer it.

The objections above indicated apply, according to the view of the court of errors and appeals, even to the case of an unincorporated society. But Court Cavour is incorporated. The so-called constitution and laws of the order are, as far as this corporation may have adopted them, nothing but its by-laws. Unlike the certificate of incorporation of the supreme and grand courts, the certificate of incorporation of Court Cavour does not recognize any obligation to or dependence upon or connection with the order at large. It is, in legal contemplation, an independent entity and its by-laws must stand or fall on that assumption. As long as it exists, it cannot devolve upon any other organization those duties or obligations which by its charter derived from the state, it is bound to perform itself. The supreme and grand courts can, by appropriate action, for cause, sever the bond which unites it to them, but after severance, it is still a corporation and bound to the obligations of a corporation; to paraphrase the words of Mr. Justice Swayze: "It has not been dissolved. It is still an existing body. All that has happened has been that its allegiance to the order is at an end."

Forfeitures are not favored. They certainly will not be enforced, where enforcement must incapacitate the corporation from performing the very duty for which it was constituted. Counsel lays great stress upon the agreement to which each individual must subscribe on joining: "I will conform to and abide by all the rules of the court and of the orders * * * or submit to the penalties therein contained." But this is the subscription of the individual binding, no doubt, upon him, but not upon the corporation. It is the right of the corporation and not of the individual that is here in controversy.

I think the bill should be dismissed.