MOYER et al. v. BUTTE MINERS' UNION.

(District Court, D. Montana. May 13, 1916.)

No. 33.

1. TRADE UNIONS ⊛═7—POWERS—FORMATION OF ASSOCIATION.

A miners' union, organized under Rev. St. Mont. 1879, div. 5, § 295, whose articles declared its objects to be to promote and protect the interest of its members, to hold property necessary to that end, and to establish branches subject to its rules and regulations, has no power to surrender these powers to an association of unions, and to subordinate itself to the control of the officers of such association, with a provision for forfeiture of its property in case of expulsion or withdrawal from the association.

[Ed. Note.—For other cases, see Trade Unions, Dec. Dig. ⊛═7.]

2. TRADE UNIONS ⊛═9—ACTIONS—EVIDENCE—SUFFICIENCY.

In an action by an association of miners' unions to compel specific performance of a provision for forfeiture of defendant union's property in case of withdrawal or suspension from the association, evidence *held* insufficient to show that the original charter issued to defendant by the association, which had been destroyed, contained such provision for forfeiture.

[Ed. Note.—For other cases, see Trade Unions, Cent. Dig. § 7; Dec. Dig. ⊛═9.]

In Equity. Bill by Charles H. Moyer, as trustee for the Western Federation of Miners, and others, against the Butte Miners' Union, a corporation. Decree for defendant.

Canning & Geagan and E. P. Kelly, all of Butte, Mont., and O. N. Hilton, of Denver, Colo., for plaintiffs.

Peter Breen and A. C. McDaniel, both of Butte, Mont., for defendant.

BOURQUIN, District Judge. Plaintiffs sue in behalf of themselves and all other members of the Western Federation of Miners, an unincorporated association, to compel defendant, an incorporated labor union, to specifically perform a contract to transfer all its property to the Federation. Defendant denies the contract, pleads it is ultra vires, and seeks to quiet title. It appears defendant, the ordinary labor union, with incidents of dues and benefits, was incorporated in 1881 under laws of Montana permitting incorporation of churches, secret societies, granges, and like associations. R. S. Mont. 1879, div. 5, p. 463. These laws provided that articles setting out the association's business or objects and "the number of trustees to conduct the same" should be filed by the trustees, whereupon the association would become a body corporate, with power "to establish a constitution and by-laws and make all such rules and regulations as may be deemed expedient" for admission to and termination of membership and "for the management of its affairs, in accordance with law," and to hold and dispose of property. Defendant's articles declared its objects to be to promote and protect the interests of its members, to hold property necessary to that end, and to establish branches subject to defendant's rules and regu-

lations. The applicable laws were subsequently re-enacted, but the changes therein did not enlarge the powers conferred. See 8th Sess. Laws, p. 141.

In 1893 delegates from defendant and other labor unions organized the Federation, and for it adopted a constitution and by-laws providing for government over both unions and their members, with penalties, fines, and expulsion for any their violation. For instance, unions were forbidden to strike until ordered by a two-thirds vote taken with prior approval of Federation officers; unions could be ordered on sympathetic strike by Federation officers; when any union was in "trouble" Federation officers should be "summoned and given full charge in the direction of negotiations"; unions could not enter into wage agreements with employers, save for a specific time and with the approval of Federation officers; unions should try members who violate their obligation to the Federation, etc., final judgment being with the Federation, the latter also having power to try any union's members and to render final judgment; unions should permit members to withdraw and members from other unions to join; propositions could be settled by referendum to all members of the Federation; unions should administer to initiates the obligation of fidelity to the Federation by it prescribed, and should elect officers in accordance with Federation law; any union reduced to less than ten members "may be considered defunct, and surrender its charter and books to the Federation," the union's property by the Federation to be held in trust for one year, to be returned to the union, if reorganized, otherwise to become property of the Federation.

A form of charter to be issued to unions also was adopted. wherein it was provided that thereby the union was authorized and empowered to transact business and to initiate members in accordance with the Federation's laws and rules; that the union would conform to said laws and rules, in default of which the charter could be revoked and the union suspended; that, should the "union withdraw or be dissolved, suspended, or forfeit this charter, then all property, moneys, books, and papers shall become the property of the" Federation; and concluding that, in consideration of the union's compliance with Federation laws, the Federation would "sustain" the union "in the exercise of all rights, privileges and benefits as a local union under its protection."

In 1893 defendant received a charter from the Federation, but denies the allegation of the complaint that it contained that aforesaid termed "property forfeiture clause." In 1914 this charter was destroyed in the Butte riots, and defendant sought its reissuance. The Federation issued a charter, and after some delay defendant refused to accept it because of said forfeiture clause therein, and withdrew from the Federation. Thereupon this suit was commenced. The complaint ignores all prior to the 1914 charter, and alleges only it and its acceptance by defendant as the contract of which specific performance is sought.

The answer, however, sets out all the foregoing. It also pleads matter tending to show misconduct of Federation officers (fit subject for

internal discipline), and that defendant had made a poor bargain, all of no materiality to the issues. The plaintiffs' case would have failed, but for that the suit has been tried as though the complaint alleged the contract or arrangement between the Federation and defendant (the constitution, by-laws, and 1893 charter), instead of alleging only a copy (the 1914 charter) of part of it.

[1] It is observed that the situation is not that of a subordinate union association lawfully created by, deriving its powers from, and subject to the control of, a superior union organization, seceding therefrom, but it is that of an independent corporation, created by the state, with powers conferred and duties imposed upon it by the state, and subject to no control save its own and that of the state, repudiating an arrangement by which it had surrendered those powers and duties to an organization created by defendant, and assuming to exercise its powers and perform its duties itself.

With that in mind, the defense of ultra vires is made out. Defendant derived all its powers from the state, and could do nothing, enter into no contracts, not within the powers so granted. By the law of its incorporation and its articles, defendant was vested with certain powers. It was created an independent body, subordinate to none other, but with authority to establish branches subordinate, and not superior, to itself. All its powers were to be exercised by itself—by its members, officers, and trustees. Their judgment, discretion, and policy were to control in all that concerned defendant. No power was given it to abdicate the authority conferred upon it by the state, and to subordinate itself and its interests to·any other persons or associations. It was given no power to relinquish self-control and management, and to bind itself to accept the judgment, discretion, and policy of others. Any contract or agreement assuming to do these latter would be beyond its powers, and`so invalid.

It is apparent its contract or agreement with the Federation, hereinbefore set out, is of this character. Under it defendant was practically reduced to merely registering the Federation's will. Defendant could not even determine its own membership. It could be compelled to strikes and other acts, perhaps against its interests and will, when ordered by the Federation, on penalty of otherwise being expelled, and forfeiture of all its property. And not it, but the Federation, was to in effect perform the duties and obligations imposed upon defendant by the state when defendant was incorporated. The law forbids all this. Hence, if the stipulation by virtue of which plaintiffs assert a right in the Federation to defendant's property was in the 1893 charter, it is a nonseverable part of an entire and ultra vires contract or agreement, and so unenforceable. Somewhat analogous cases are Grand Court v. Court Cavour, 82 N. J. Eq. 89, 88 Atl. 191; Id., 83 N. J. Eq. 343, 91 Atl. 1068; Goodman v. Lodge No. 7, 67 Md. 117, 9 Atl. 13, 13 Atl. 627; Lodge No. 299 v. Ellsworth, 78 Cal. 166, 20 Pac. 399, 2 L. R. A. 841.

[2] To complete the case, however, it is found that the evidence is insufficient to establish that said stipulation was in the 1893 charter. Without reciting all the evidence, it is in conflict, and the preponder·

ance of it in quantity and quality, taken as a whole, is not with plaintiffs. The delegates forming the Federation met in defendant's hall, and the evidence is persuasive that after they adopted a form of charter, at a meeting of defendant the stipulation in question was objected to, and a form without it was printed by order of defendant and issued to it by the Federation. This is supported by testimony of both parties that the charter of 1893 was not a duplicate of other charters then issued, but contained an honor roll of certain of defendant's members, which differentiated it from the other charters, and of which the Aspen charter, issued amongst the first, is in evidence. Further support is found in the likelihood that defendant, the inspiration of the Federation, the only owner of property of consequence, probably of ability to stand alone, and always the mainstay of the Federation, would not hazard its property upon an experimental Federation, wherein it might be outnumbered, and that the other unions desirous of its alliance would yield the point.

This, too, might account for the fact that defendant's charter was of date May 15, 1893, though the first charters printed by the Federation were ordered May 20, 1893, and the price fixed and the unions given numbers apparently for charters on June 16, 1893, which is also the date of the Aspen charter, No. 6. And this might also account for the founding of plaintiffs' suit on the 1914 charter, instead of upon that of 1893. When, in defendant's judgment it was for its interests to withdraw from the Federation, it could of right do so, whether wise or unwise, and without forfeiture of its property.

Decree for defendant.