# MILTON A. VESEY AND OTHERS v. MARY ELLEN VESEY, ALIAS MARY E. CULLIS, AND OTHERS.[1]

July 18, 1952.

No. 35,707.

[1]Reported in 54 N. W. (2d) 385.

O. O. *Myhre*, L. M. *Severson*, and R. C. *Andrews*, for appellants. *Nelson*, *Palmer & Moses*, for respondent Mary Ellen Vesey.

CHRISTIANSON, JUSTICE.

This is an appeal from an order sustaining demurrers to plaintiffs' complaint.

Plaintiffs, who are children by a prior marriage of the decedent, William Vesey, bring this action against Mary Ellen Vesey, widow of decedent, the Marquette National Bank of Minneapolis as administrator of decedent's estate, and the Chicago-Lake State Bank and the Twin City Federal Savings & Loan Association, depositories of funds in the names of William and Mary Ellen Vesey. Plaintiffs seek judgment adjudging that Mary Ellen Vesey is not entitled to the funds and directing the depositories to pay them to decedent's administrator for the benefit of plaintiffs.

Plaintiffs allege that William and Mary Ellen Vesey, subsequent to their marriage in 1947, opened a checking account in the Chicago-Lake State Bank and a savings account in the Twin City Federal Savings & Loan Association, both in the form of a joint and several account with right of survivorship; that all deposits in the two accounts were made by William Vesey; that there were balances of about $3,200 and $4,000, respectively, in the accounts at the time of his death; and that subsequent to his death defendant Mary Ellen Vesey withdrew the funds in the checking and savings accounts and redeposited them in her own name in the bank and the savings and loan association.

Plaintiffs allege further that at the time of his marriage to defendant Mary Ellen Vesey decedent was a robust man in good health, but that, with premeditation and design to impair decedent's health and to hasten his death, said defendant began a course of

nagging, threats of violence, and actual physical violence which weakened decedent mentally and physically; that at the time of his death on March 1, 1951, decedent was suffering from a serious heart ailment, aggravated by chronic asthma, and was weak, disabled, and subordinated to the will of defendant Mary Ellen Vesey; that, although she knew of decedent's condition and that any exertion might be fatal to him, defendant coerced decedent, who was unaware of his heart condition, to walk with her through deep snow on a cold and windy day, which exertion and exposure caused his death after he had walked two blocks.

Plaintiffs allege that defendant Mary Ellen Vesey wilfully and feloniously caused the death of decedent and that by reason of such conduct she is not entitled to the funds in the depositories.

Defendants' demurrers to the complaint were sustained.

■ The first question presented by this case is whether the complaint alleges a felonious killing of decedent by defendant Mary Ellen Vesey.[2]

The parties and the district court have treated the complaint as presenting a question of negligent homicide within the terms of the statutes defining manslaughter in the second degree.[3] The complaint,

---

[2]Since this is an appeal from an order sustaining demurrers to the complaint, we must take the facts alleged in the complaint as true and will regard the demurrers as admitting all necessary inferences or conclusions of law which follow from facts well pleaded, as well as all inferences of fact which may reasonably be drawn from the facts expressly pleaded. In re Involuntary Dissolution of Hedberg-Freidheim Co. 233 Minn. 534, 47 N. W. (2d) 424; Local 1140 v. United Electrical R. & M. Workers, 232 Minn. 217, 45 N. W. (2d) 408, 23 A. L. R. (2d) 1197.

[3]M. S. A. 619.18 provides in part:

"Such homicide is manslaughter in the second degree when committed without a design to effect death:

\* \* \* \* \*

"(3) By any act, procurement, or culpable negligence of any person, which, according to the provisions of this chapter, does not constitute the crime of murder in the first or second degree, nor manslaughter in the first degree."

M. S. A. 619.20 provides in part:

"Every person who, \* \* \* by any unlawful, negligent, or reckless act

however, includes allegations of premeditation and design to hasten decedent's death and that defendant Mary Ellen Vesey wilfully caused his death, which import a higher degree of felonious homicide.[4] It is not necessary for us to decide the degree of murder or manslaughter alleged; it is sufficient that the complaint alleges a killing which the criminal statutes of this state declare to be a felony.

No cases having fact situations like the instant case have been cited, and none have been found. The case with facts most similar is United States v. Freeman, 4 Mason's (U. S.) 505, 25 Fed. Cas. No. 15,162, in which the captain of a ship, knowing that a sailor was weak and disabled, ordered him to climb the rigging of the ship, from which he fell and was drowned. The captain was held guilty of manslaughter. The court noted that it would be murder if malice were present and that it did not matter whether moral or physical force caused the sailor to comply with the order. Coercing or persuading another to do an act which is likely to prove fatal is murder or manslaughter.[5] The above reasoning applies to the instant case, in which defendant Vesey allegedly caused decedent to do an act which she knew would be dangerous to his life and which did in fact cause his death. It is sufficient that the act complained of accelerated decedent's death, and the fact that he was in ill health and weak does not lessen the criminal responsibility.[6] We think the complaint alleges a felonious homicide.

---

not specified by or coming within the provisions of any other statute, occasions the death of a human being, shall be guilty of manslaughter in the second degree."

[4]M. S. A. 619.07 provides in part:

"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree, when perpetrated with a premeditated design to effect the death of the person killed * * *." See, State v. Staples, 126 Minn. 396, 400, 148 N. W. 283, 284.

[5]See, Blackburn v. State, 23 Ohio St. 146; Wharton, Homicide (3 ed.) § 22.

[6]State v. Frazier, 339 Mo. 966, 98 S. W. (2d) 707; Rutledge v. State, 41 Ariz. 48, 15 P. (2d) 255.

■ The second question presented by this case is whether M. S. A. 525.87 bars one joint owner of a joint and several bank account who feloniously takes the life of the other joint owner from acquiring the balance of the account. That section provides in part:

"No person who feloniously takes or causes or procures another so to take the life of another shall *inherit* from such person or *receive any interest in the estate of the decedent,* or take by *devise* or *bequest* from him any portion of his estate." (Italics supplied.)

The quoted portion of the statute applies only if the interest which the survivor takes upon the death of the decedent is part of the estate of the decedent.

The statute relating to bank accounts[7] of the type involved in this case is § 48.30, which provides in part:

"* * * When any deposit shall be made by or in the names of two or more persons upon joint and several account, the same, or any part thereof, and the dividends or interest thereon, may be paid to either of these persons or to a survivor of them, or to a personal representative of the survivor."

This court, in Dyste v. Farmers & Mechanics Sav. Bank, 179 Minn. 430, 229 N. W. 865, held that in addition to protecting the bank the statute also recognizes that making a deposit in that manner gives to each of the persons named the right to make withdrawals therefrom and gives to the survivor the right to withdraw the residue. It also held that the right to make withdrawals vested a present interest which was sufficient to sustain a valid gift against a charge that it was an invalid testamentary disposition. The interest vested by the right to make withdrawals is also sufficient to take the bank accounts in the instant case out of the terms of § 525.87, since the surviving joint owner of the accounts takes not from the estate of the deceased joint owner but by virtue of the contract of deposit.

---

[7]The parties raise no question about the propriety of treating a savings share account in a savings and loan association the same as a savings account in a bank or trust company. We shall take it as conceded for the purposes of this appeal that they are to be treated the same and leave consideration of that question until it is properly presented.

■ The next question is whether, in the absence of a statute, a person who feloniously takes the life of another should be permitted to take the balance of funds held by the two in joint and several account.

Other jurisdictions have reached conflicting results in cases involving interests similar to those involved here. Some have held that the survivor takes absolutely because he has a complete vested interest by virtue of the original conveyance or contract and gained nothing by the death which he did not already have.[8] In one case involving real and personal property and a joint bank account, all held in joint tenancy, the court held that the statutes of that jurisdiction relating to joint tenancy, which made no exception to the right of survivorship where the survivor murdered the other joint tenant, were binding on the court.[9] New York appears to be the only jurisdiction in which the courts have divested the survivor of all legal title. They have done so on the grounds that to allow him to take would be abhorrent to the rules of equity and justice.[10] Many courts, agreeing with the sentiments of the New York court, have held that, although the survivor's interest vested by virtue of the original conveyance or contract, he must hold

[8]Welsh v. James, 408 Ill. 18, 95 N. E. (2d) 872 (real property and bank accounts held in joint tenancy); Oleff v. Hodapp, 129 Ohio St. 432, 195 N. E. 838, 98 A. L. R. 764 (joint bank account); Wenker v. Landon, 161 Or. 265, 88 P. (2d) 971 (real property held in tenancy by the entireties); Di Lallo v. Corea, 19 Pa. D. & C. 282, 81 Pittsburgh Leg. J. 119 (joint bank account); Hamer v. Kinnan, 16 Pa. D. & C. 395 (real property held in tenancy by the entireties); Beddingfield v. Estill & Newman, 118 Tenn. 39, 100 S. W. 108, 9 L.R.A.(N.S.) 640 (real property held in tenancy by the entireties).

[9]Smith v. Greenburg, 121 Colo. 417, 218 P. (2d) 514.

[10]Matter of Santourian, 125 Misc. 668, 212 N. Y. S. 116 (joint bank account); see, Bierbrauer v. Moran, 244 App. Div. 87, 279 N. Y. S. 176 (real property and bank accounts held in joint tenancy); Van Alstyne v. Tuffy, 103 Misc. 455, 169 N. Y. S. 173 (real property held in tenancy by the entireties).

varying portions of the property on constructive trust for the benefit of those who would take the decedent's estate.[11]

In our opinion, the latter view is preferable. It does not interfere with any vested legal rights, yet it gives effect to the appealing doctrine that a person should not be permitted to profit by his own wrong. That doctrine has been given effect many times by this court, which has imposed constructive trusts whenever the legal title to property was obtained through means or under circumstances which rendered it unconscionable for the holder of legal title to retain and enjoy the beneficial interest. 6 Dunnell, Dig. & Supp. § 9916. The doctrine was also recognized by way of dictum in Sharpless v. Grand Lodge, 135 Minn. 35, 159 N. W. 1086, L. R. A. 1917B, 670, a case involving an insurance policy on the life of a person murdered by the beneficiary, which was decided before the enactment of § 525.87.[12]

In Wellner v. Eckstein, 105 Minn. 444, 117 N. W. 830, also decided before the enactment of § 525.87, this court divided three to two in favor of applying the doctrine that a man should not be permitted to profit by his own wrong to prevent a person who had killed the decedent from taking under the statutes of descent and distribution. Although this problem was thoroughly discussed, the case was de-

[11]In re King's Estate, 261 Wis. 266, 52 N. W. (2d) 885 (real and personal property held in joint tenancy); Neiman v. Hurff, 14 N. J. Super. 479, 82 A. (2d) 471 (real property held in tenancy by the entireties and personal property held in joint tenancy); Colton v. Wade (Del. Ch.) 80 A. (2d) 923 (real property held in tenancy by the entireties); Grose v. Holland, 357 Mo. 874, 211 S. W. (2d) 464 (real property held in tenancy by the entireties); Sherman v. Weber, 113 N. J. Eq. 451, 167 A. 517 (real property held in tenancy by the entireties); Barnett v. Couey, 224 Mo. App. 913, 27 S. W. (2d) 757 (bank account held in tenancy by the entireties); Bryant v. Bryant, 193 N. C. 372, 137 S. E. 188, 51 A. L. R. 1100 (real property held in tenancy by the entireties); see, dissenting opinion in Oleff v. Hodapp, 129 Ohio St. 432, 439, 195 N. E. 838, 841, 98 A. L. R. 764 (joint bank account).

[12]That part of § 525.87 not included in the portion quoted above prevents recovery of insurance proceeds by a beneficiary who feloniously takes, or causes or procures to be taken, the life of the insured.

cided upon another ground. Two years later, in Gollnik v. Mengel, 112 Minn. 349, 128 N. W. 292, the court divided four to one against applying the doctrine, with one of the justices in the majority limiting his concurrence to cases in which the killing was not premeditated. The basis of the decision was that the descent-and-distribution statute was clear and unambiguous, and, since the statute did not make an exception for one who killed the decedent, it would be a trespass upon the legislative domain to apply the doctrine to prevent the killer from taking.

There is no statute which forbids application of the doctrine in the instant case; and all the justices in the Wellner and Gollnik cases agreed that, in the absence of statute preventing it, the doctrine should be applied. Because the problem of preventing one from acquiring various types of property by feloniously causing the death of another are complex,[13] it would be desirable to have all questions, rather than only those relating to estates of decedents and insurance proceeds, governed by legislation. But, until the legislature acts, this court can, by imposing a constructive trust, prevent the repugnant result that one joint owner of a bank account may take the whole account by right of survivorship after feloniously causing the death of the other joint owner.

■ Still remaining is the question of what portion of the accounts should be held in constructive trust by the survivor.

Provisions against forfeiture similar to Minn. Const. art. 1, § 11,[14] have influenced many courts in answering this question. Some of the courts which gave the property to the survivor absolutely expressed the opinion that, since he takes the whole interest by virtue of the original contract or conveyance and gains nothing by the death, it would work a forfeiture to take any part of the property from him.[15] On the other hand, the courts which imposed con-

[13]See, Wade, *Acquisition of Property by Wilfully Killing Another—A Statutory Solution,* 49 Harv. L. Rev. 715.

[14]"* * * no conviction shall work corruption of blood or forfeiture of estate."

[15]Welsh v. James, Wenker v. Landon, Beddingfield v. Estill & Newman, all cited in footnote 8, *supra.*

structive trusts recognized that, although the survivor takes by virtue of the contract or conveyance, he nevertheless gains a real benefit by the death of the other owner. They hold that preventing him from gaining that benefit is not a forfeiture, but they agree that he should retain what he had before the death.

Since all of the cases imposing constructive trusts have involved tenancies by the entireties or joint tenancies, the survivor had, before the death of the other joint owner, a right to equal enjoyment during their joint lives and the right to take the whole if he outlived the other. Thus, some courts have allowed him to retain a one-half interest for his life free of trust, but, because he has prevented the natural ascertainment of the survivor, have assumed that the decedent would have survived.[16] The New Jersey courts have given the survivor the commuted value of one-half the income for his life expectancy and have determined survivorship according to the life expectancies of the decedent and the survivor.[17] Two Missouri cases have given the survivor a one-half interest free of trust and have imposed a constructive trust on the other half, but in both cases the representative of the decedent asked for only one-half.[18] The dissenting judges in the King case would reach a like result, treating the murder as a severance of the joint tenancy.[19]

The bank accounts in the instant case are not joint tenancies and do not fall within any of the other traditional categories of legal ownership. The nature of a bank account of this type was considered by this court recently in Park Enterprises, Inc. v. Trach, 233 Minn. 467, 469, 47 N. W. (2d) 194, 196, in which the court said:

"* * * 'Joint and several,' when used to designate a type of ownership, is somewhat of a legal anomaly notwithstanding the

[16]Colton v. Wade; see, In re King's Estate; cf. Bryant v. Bryant, all cited in footnote 11, *supra*.

[17]Sherman v. Weber and Neiman v. Hurff, both cited in footnote 11, *supra*.

[18]Barnett v. Couey and Grose v. Holland, both cited in footnote 11, *supra*.

[19]In re King's Estate, cited in footnote 11, *supra*.

fact that the term appears in M. S. A. 48.30. By definition, several ownership is a denial of joint ownership. Since the type of ownership which the bank and its depositors have created by their contract defies classification under traditional concepts of property ownership, we are forced to treat this case as presenting a contract question and must decide what the incidents of this type of ownership are primarily by reference to the terms of the contract creating it."

The contract alleged by plaintiffs pursuant to which the checking account in the instant case was opened provides:

"* * * the undersigned joint depositors * * * hereby agree each with the other and with The Chicago-Lake State Bank, Minneapolis, Minnesota, that all funds heretofore and hereafter deposited to the credit of this account are and shall be the joint property of the undersigned, subject to the order of either, and that the balance upon the death of either shall be the sole property of the survivor and shall be payable upon his or her order; * * *."

The contract alleged by the plaintiffs pursuant to which the savings account was opened provides:

"* * * the undersigned depositors hereby apply for a membership and for a savings share account in the Twin City Federal Savings and Loan Association of Minneapolis and for the issuance of evidence of membership in the approved form in the joint names of the undersigned as joint tenants with the right of survivorship and not as tenants in common * * *; it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to the membership and any share account in said association held by the undersigned, whether the other person or persons named in the certificate be living or not, and that the repurchase or redemption value of any such share account or other rights relating thereto may be paid or delivered in whole or in part to any one of the undersigned, who shall first act, and such payment or delivery or a receipt or acquittance signed by any one

of the undersigned shall be a valid and sufficient release and discharge of said association; * * * ."

By the terms of the contracts, defendant Mary Ellen Vesey had a right both before and after the death of decedent to withdraw all the funds from the accounts. Prior to the death of decedent, however, this right could have been defeated by decedent had he first withdrawn the funds. Whether decedent would have withdrawn all the funds during his lifetime before defendant Vesey had withdrawn them or, if they were not withdrawn, whether he would have survived her can now never be known. If, as plaintiffs contend, defendant Vesey has prevented the natural ascertainment of the answers to these questions, it is fair that the doubt should be resolved against her and the funds delivered to the estate of decedent to be distributed with the rest of his estate. Defendant Vesey's interest prior to decedent's death could have been defeated by occurrences which she prevented by her allegedly felonious act, and she should not be permitted to gain an indefeasible interest thereby.

It follows that the district court's order sustaining the demurrers to the complaint should be reversed.

Reversed.