Peter H. Olson, etc. et al., Plaintiffs-Appellants, v. Peter W. Carbonara, et al., etc., Defendants-Appellees.

Gen. No. 47,500.

First District, Second Division.
March 31, 1959.
Rehearing denied April 14, 1959.
Released for publication April 14, 1959.

Charles A. Bellows and Jason Ernest Bellows, of Chicago (Herbert S. Thatcher, of counsel) for appellants.

Abraham W. Brussell, of Chicago (Abraham W. Brussell, Robert Plotkin, of counsel) for defendants-appellees.

PRESIDING JUSTICE LEWE delivered the opinion of the court.

Plaintiffs sued for a declaratory judgment, for temporary and permanent injunctions and for an account-

ing. They appeal from the denial of their motion for a temporary injunction and from a declaratory judgment for defendant entered on the pleadings.

The Bakery and Confectionery Workers International Union of America, hereafter referred to as B.C. International, was organized in 1886, became affiliated with the A. F. of L. in 1887, and with the AFL-CIO in 1955. On April 1, 1956, it granted a charter to Local 1, which had a membership of about 8,000 in Chicago and vicinity.

In December, 1957, the AFL-CIO expelled the B.C. International and in its place chartered American Bakery and Confectionery Workers International Union, hereafter referred to as A.B.C. International.

In February, 1958, a majority of the Executive Board of Local 1 adopted a resolution disaffiliating from the B.C. International. It then affiliated with the A.B.C. International, as its Local No. 1. More than seven members of the original Local 1, B.C. International, did not disaffiliate and "desired to retain the charter." B.C. International appointed a "special trustee" to take charge of the local's assets, which had been appropriated by the disaffiliating members.

Plaintiffs contend they are entitled to the local union assets on two separate and distinct theories. Plaintiff B.C. International claims the assets on the theory that the local has seceded or has been dissolved in its entirety, with none of the local union members making a claim to the assets. Plaintiff, the "special trustee" of Local 1, claims the assets on behalf of the remaining members who desire to continue their affiliation with the B.C. International.

The vital issue presented is whether the doctrine of "frustration of contracts" justified the appropriation of the assets of B.C. International, Local 1, by its disaffiliated members, now comprising the newly formed Local 1 of the A.B.C. International. This issue was

70

raised in defendant's answer and counter claim and is a question of first impression in Illinois.

B.C. International, Local 1, had no Constitution, and the parties agree that its 1956 charter and the B.C. International Constitution comprised the terms of the contract between them. This charter provides "that the said local union does conform to the Constitution . . . and in default thereof this charter may be suspended or revoked." The application for membership in that local carried a "promise to obey the laws of the International."

Article XIV of the International Constitution covers "Local Unions." Section 8 of that article provides: "All assets of the Local should be held by the Local in its name and used only to effectuate the objectives of this Constitution and in accord with its provisions." In the second paragraph it provides: "Should a local union dissolve, secede or have its charter revoked" its assets "revert to the ownership of the International." In that event the International "may authorize" a representative to take charge of the assets and turn them over to the International. If the "defunct" local is reorganized within one year the property shall become that of the reorganized local. Section 22 of Article XIV provides that "No local can dissolve while seven members remain in good standing and desire to retain the Charter."

Both the Supreme Court of Illinois and this court have recognized the doctrine of "frustration of contract" but have not applied it. See 12 I. L. P., Contracts, § 383. In Leonard v. Autocar Sales & Service Co., 392 Ill. 182, the court referred to "some general principles governing the construction and enforcement of contracts" and said at pp. 187–88: "While not new, this doctrine of frustration or 'commercial frustration', as it is so termed, came into prominence following the first World War. . . ." The "doctrine of frustra-

71

tion" the court also said is a "further exception to the fundamental rule that subsequent contingencies, not provided against in the contract, which render performance impossible, do not bring the contract to an end." The "doctrine of frustration" "rests on the view" that where, from the nature of the subject matter and surrounding circumstances, the parties must have known when making the contract that it could not be performed unless some "particular condition" or "state of things" continue to exist, the assumption of that continued existence is implied and the parties are excused from performance because "the contract was not in reality an absolute contract, binding them to perform under such changed conditions." If the event rendering performance impossible "might have been anticipated or guarded against in the contract" the parties are not absolved. The doctrine of frustration was not applied in the Leonard case, nor in Warshawsky v. American Automotive Products Co., 12 Ill.App. 2d 178, where Justice Schwartz referred to a distinction between the doctrine of "commercial frustration" and impossibility of performance. The distinction is thoroughly discussed in Edwards v. Leopoldi, 20 N. J. Super. 43, 89 A.2d 264.

We think that the question before us narrows down to this: could the trial judge have reasonably concluded from the facts admitted by the pleadings that the B.C. International and the members of Local 1 must have known, from the nature of the subject matter and the surrounding circumstances when the contract between them was made in April, 1956, that unless the B.C. International continued in affiliation with AFL-CIO, the contract could not be performed, so as to give rise to an implied condition, that unless affiliation continued to exist the parties would be excused from performance; and could the trial judge have reasonably concluded that the expulsion of B.C. Inter-

national could not have been anticipated and guarded against in the contract.

That question has been before courts in other states, and some cases involved the B.C. International. The majority of the cases involving the problem of frustration of contract in connection with union expulsion situations involve the United Electrical, Radio and Machine Workers of America, usually referred to as UE, and its expulsion from the CIO because of communist domination.

One of the most frequently cited cases is Clark v. Fitzgerald, 197 Misc. 355, 93 N.Y.S.2d 768. After the CIO had expelled UE, Local 450 disaffiliated itself from UE and transferred its assets to a special committee. UE sought to restrain this action on the ground that it was violative of the UE Constitution which provided that disaffiliation would be void if more than seven members of the local desired to remain affiliated. In denying an injunction on the pleadings, the New York Supreme Court held that the contract between the local and UE was abrogated by the latter's expulsion from the CIO and that the constitution was no longer binding on the local or its members. In reaching this decision the court held that continued affiliation with the CIO was an implied condition of the contract between the local and B.C. International. The evidence supporting this conclusion revealed that affiliation with the CIO was announced in the heading of the booklet which contained the UE Constitution and by-laws; that the collective bargaining agreements referred to CIO; that the Local's Constitution contained language (Local 450 "shall be affiliated" with UE, CIO) indicating that continued affiliation with the CIO was essential to the contract between UE and the local. The court also noted that UE stressed its affiliation with CIO as a reason for joining UE.

73

A New Jersey Superior Court in Duris v. Iozzi, 6 N. J. Super. 530, 70 A.2d 793, refused to enjoin the secession of a local from UE after the latter's expulsion from CIO. The factors inducing the court to hold that the implied condition of continued affiliation was frustrated by UE's expulsion from CIO included: the campaign by UE to induce the locals to join the International stressed CIO affiliation; the CIO was mentioned on the ballot cast when the local voted to join UE; the CIO was referred to on membership applications, stationery and other printed matter, the local flag, and the inside cover of the constitution booklet. In Bozeman v. Fitzmaurice [Ohio App.] 107 N.E.2d 627, a trial revealed that letterheads, membership applications, contracts, badges and signs of the local referred to CIO affiliation; that both the local and UE advertised affiliation with CIO; and that the local constitution referred to the CIO. On the basis of this evidence the Ohio Court of Appeals held the doctrine of frustration applicable and ruled in favor of the local.

In holding that the local union members' desire to belong to the CIO was frustrated by UE's expulsion, the Minnesota Supreme Court in Local 1140 United Electrical, Radio and Machine Workers of America v. United Electrical, Radio and Machine Workers of America, 232 Minn. 217, 45 N.W.2d 408, affirmed the trial court's judgment on the pleadings, and decided that CIO affiliation was held out to the local as a major inducement for joining UE and that the local derives certain benefits from its status as a CIO union. The recent case of Crawford v. Newman, 11 Misc.2d 322, 174 N.Y.S.2d 667, is almost identical with the instant controversy and involves the same International and the same questions as the case before us. There, the New York Supreme Court refused to grant a temporary injunction, on the pleadings, to plaintiffs who

sought the same relief as plaintiffs seek here. After discussing the frustration doctrine the court goes on to say at page 671, that: ". . . sufficient evidence appears, both from the constitution and extrinsic sources, to satisfy this court that continuing AFL-CIO was a condition of the Locals' affiliation with the International."

Plaintiffs rely on New Jersey and New York cases also. In Fitzgerald v. Abramson, 89 F. Supp. 504 (S.D. N.Y.), the local attempted to raise the theory of frustration because of the International's expulsion, but the Federal District Court avoided a discussion of the problem by saying that was a question of fact and could not be decided on the affidavits presented. It should be noted that this case involved the same situation as Clark v. Fitzgerald, which applied the frustration doctrine. The Federal Court thought that the evidence differed from that presented in the Clark case and issued a temporary injunction to maintain the status quo of the property rights involved. This opinion indicates that frustration was not actually considered.

After an extended analysis of the doctrine in Edwards v. Leopoldi, 20 N. J. Super. 43, 89 A.2d 264, the New Jersey Superior Court held the frustration theory not applicable because there was not sufficient evidence presented at the trial to indicate that continued affiliation was an implied condition of the contract. There was no evidence that the CIO helped organize the local or that CIO affiliation was used as an inducement. There was no mention of the CIO in the local charter or on the membership cards and not all of the printed matter referred to the CIO. In Overton-Bey v. Jacobs, 131 N.Y.S.2d 31 (Sup. Ct.), a local disaffiliated from the International Longshoremen's Association after its expulsion from A. F. of L. and the New York Supreme Court could find no basis for an implied condi-

75

tion of affiliation and accordingly rendered judgment on the pleadings for the International. There was no reference to A. F. of L. in the local's charter or constitution and no evidence that the stationery, membership cards, insignia or other printed matter referred to affiliation and the AFL affiliation was not used as an inducement to join the International.

We think the reason for decision in the cases favorable to the locals is that the continued affiliation of a local union with the International was an implied condition of the contract, and that the decision in each case depended upon the essential relationship of the local and the international as revealed by the various indicia in the pleadings or evidence of both.

In light of the authorities discussed, we are of the opinion that the trial court was justified in applying the frustration doctrine in favor of defendants. There are sufficient uncontradicted exhibits in the record and facts admitted to warrant the inference that no evidence could justify a contrary decision.

The first page of the International Constitution states "Affiliated with A. F. of L. since February 23, 1887; Affiliated with AFL-CIO since December 8, 1955."; Article IX of the Constitution provides that delegates "shall" be appointed to the AFL-CIO convention and "shall" vote as a unit; the top of the Charter states "Affiliated with American Federation of Labor"; the applications for membership in the local states "Affiliated with A. F. of L."; the membership dues book is labeled "B & C, A. F. of L."; the collective bargaining agreements refer to AFL-CIO affiliation.

Although the record contains no specific reference to the B.C. International's holding out AFL-CIO affiliation as an inducement for joining, the statement on the application for membership must have been considered as having had value as a drawing power. We must assume that the local read the International

76

Constitution and the other documents containing various references to affiliation before it contracted with the International and considered affiliation implicit in all the contract terms. Furthermore, we think that Local 1 would not have entered the contract when it did, unless the B.C. International was then affiliated with the AFL-CIO, and that the B.C. International could not have reasonably held out the promise of its constitutional purpose unless it was affiliated with the AFL-CIO. Finally, from the relationship of the B.C. International and the local members, we are of the opinion that the expulsion of the former, as a "frustration" discharging the parties from the duty of performance, could not have been anticipated or provided against if anticipated.

An International is in effect an association of locals and the members of locals, and its objects and goals therefore should be those of the member locals and its main purpose should be rendering service to the members. Through the International's affiliation with AFL-CIO the local members receive the benefits of the power and prestige of the AFL-CIO and the benefits of the research they could not have by means of the local itself, the benefit of its influence in legislative matters as well as a national forum in which to express grievances and make themselves heard as part of the labor movement by means of a national organization. Cf. Crawford v. Newman, 13 Misc.2d 198, 175 N.Y.S.2d 903. A further benefit of affiliation is protection of a local from raids by other unions. Local 1140 United Electrical, Radio and Machine Workers of America v. United Electrical, Radio and Machine Workers of America, 232 Minn. 217, 45 N.W.2d 408. By its expulsion from the AFL-CIO an International reflects discredit upon its locals and injures their relations with the public and with employers; it is quite normal for

77

a local to avoid this unfavorable situation by disaffiliating itself.

After a careful examination of the record, it is our opinion that the trial court could have reasonably concluded, as a matter of law, on the facts admitted by the pleadings that both Local 1 and the B.C. International must have known when the contract was executed that it could not be performed as intended unless the B.C. International continued in affiliation with the AFL-CIO; that the contract was frustrated by the B.C. International's expulsion from the AFL-CIO; and that the disaffiliation of Local 1 from B.C. International was justified by this frustration. It necessarily follows that Local 1 is no longer bound by the provisions of the B.C. International Constitution which provide that the assets of the local revert to the ownership of the B.C. International upon local's disaffiliation. The overwhelming majority of the members of Local 1, who own the assets, are entitled to control of the assets which they appropriated on disaffiliation. Local 1140 United Electrical, Radio and Machine Workers of America v. United Electrical, Radio and Machine Workers of America, 232 Minn. 217, 45 N.W.2d 408.

Since we think the plaintiffs could not ultimately prevail in this action, it follows that we approve the action of the trial court in denying the temporary injunction. For the reasons given the judgment is affirmed.

Affirmed.

KILEY and MURPHY, JJ., concur.