H.K. WARNER *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. JAMES E. LUCAS, Defendant-Appellee and Cross-Appellant.

Fifth District   No. 5—87—0769

Opinion filed June 21, 1989.

Thomas Y. Pearson, of Kenney & Pearson, of Springfield, for appellants.

Edward W. Huntley, of Holley, Keith & Huntley, of Springfield, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Plaintiffs, Harold K. Warner and his wife, Betty, appeal from the judgment imposed against them by the circuit court of Montgomery County in their action against defendant, James Lucas. We reverse in part and affirm in part.

The Warners entered into an installment sales contract with

Lucas on September 28, 1983, for the sale of their stock in the State Bank of Farmersville. Lucas agreed to buy the Warners' 757 shares of stock at $90 per share for a total of $68,130. Upon execution of the contract, Lucas was to pay $100, and then on January 2, 1984, make a payment of $20,030, followed by five equal annual installments toward the remaining balance, plus interest of 10% per year. In exchange, the Warners agreed to place the stock in escrow to be delivered to Lucas *pro rata* as he made the required payments. Lucas was also to receive all cash or stock dividends the shares would earn while in escrow as well as the Warners' proxy to vote the shares. Lucas made only the first two payments totaling $20,130. He failed to make the January 1985 payment because of personal financial difficulty. And, by August 9, 1985, the bank was closed by regulatory agencies. Lucas refused to make the remaining payments. The Warners filed suit requesting the balance due, $48,000, plus accrued interest, for a total of $60,637 on the basis of breach of contract. Lucas answered with the affirmative defense that he had been defrauded and filed a counterclaim for the return of all money paid. The jury found in favor of Lucas on the Warners' complaint and in favor of the Warners on Lucas' counterclaim. The Warners filed a motion to set aside the verdict against them, which the trial court denied, and then this appeal.

The Warners argue on appeal the verdict in favor of Lucas on their complaint for breach of contract is against the manifest weight of the evidence. They believe that not only did they prove all the elements of their complaint, namely the existence of the contract, compliance with their obligations under the contract and Lucas' lack thereof (see *Thilman & Co. v. Esposito* (1980), 87 Ill. App. 3d 289, 296, 408 N.E.2d 1014, 1020), but also that Lucas failed to prove fraud by clear and convincing evidence. We must agree with the Warners' contentions. Clearly Lucas' breach of contract was established. The only real issue was Lucas' claim of fraud.

In general, courts will not interfere with contracts to which parties have agreed unless there existed at the time the contract was entered into a defect, such as fraud, in the negotiation process. (See *Dana Point Condominium Association, Inc. v. Keystone Service Co.* (1986), 141 Ill. App. 3d 916, 920, 491 N.E.2d 62, 66.) In order to constitute fraud which would invalidate a contract, a false statement of material fact known or believed by the maker to be false must have been made with the intent to induce another to act and must have been reasonably believed and justifiably relied upon by the other party to his detriment. (See *Tan v. Boyke* (1987), 156 Ill. App. 3d 49, 54, 508 N.E.2d 390, 393; *Central States Joint Board v. Continental*

*Assurance Co.* (1983), 117 Ill. App. 3d 600, 604, 453 N.E.2d 932, 935. See also *Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 161, 510 N.E.2d 409, 413.) Fraud also may consist of the intentional omission or concealment of a material fact under circumstances creating an opportunity and duty to speak. (See *Tan*, 156 Ill. App. 3d at 54, 508 N.E.2d at 393; *Wright v. Richards* (1986), 144 Ill. App. 3d 450, 457, 494 N.E.2d 1269, 1274; *Central States*, 117 Ill. App. 3d at 604, 453 N.E.2d at 935.) Without the presence of fraud in the negotiation process, however, a contract will be enforced as written. A contract cannot be set aside merely because the agreement later turns out to be a bad bargain for one of the parties. (*Dana Point Condominium*, 141 Ill. App. 3d at 920, 491 N.E.2d at 66.) The evidence at trial here simply did not establish fraud so as to invalidate the stock transaction between the Warners and Lucas.

The Warners and Lucas entered into their contract in September 1983. Mr. Warner had retired from active involvement in the management of the State Bank of Farmersville in 1978, and by the summer of 1983, he and his wife were permanent residents of Florida. The Warners decided to sell their stock because of their retirement to Florida and contacted Lucas because his family already owned 8% to 10% of the bank's stock. Mr. Warner believed Lucas would be a good director for the bank and testified he would not have sold him the stock if he felt the bank was in trouble. The Warners made no representations as to the financial condition of the bank and both parties independently determined the stock was worth $90 per share. More importantly, no information available to either party suggested the bank was in financial difficulty in September of 1983. The latest FDIC report from March of 1983 gave the bank a rating of two on a one-to-five scale, the same rating the bank had always received. Few, if any, banks received a superior one rating. While the report also indicated the bank's loan-to-deposit ratio was too high at 71%, the bank made efforts to liquidate its more marginal loans, thereby reducing the ratio to 57% at the close of 1983. The bank's percentage of classified loans was close to its historic norm, no major loans were classified, and the percentage of classified loans ruled losses was unchanged. Moreover, at the time the contract was entered into, Mr. Warner was unaware the bank's profit and loss statement for 1983 would show a profit some $150,000 less than that for 1982. The net earnings were approximately the same; the funds had been allocated to increase the reserve for possible loan losses. Finally, Lucas admitted at trial Mr. Warner's testimony that the bank was sound at the time of their contract was "an honest opinion." Lucas failed to prove

by clear and convincing evidence that the Warners possessed meaningful information unknown to Lucas which they deliberately concealed with the intent to induce Lucas to enter the contract. Moreover, there was no fiduciary or any other legal relationship between the Warners and Lucas giving rise to a duty to speak (see *Central States*, 117 Ill. App. 3d at 607-08, 453 N.E.2d at 937), nor was there any evidence of justifiable reliance on the part of Lucas, a major stockholder in the bank (see *Zimmerman*, 156 Ill. App. 3d at 167, 510 N.E.2d at 416-17; *Central States*, 117 Ill. App. 3d at 606-07, 453 N.E.2d at 936-37). Unfortunately, the contract turned out to be unprofitable for Lucas, but that is the nature of and the risk involved in stock trading. The contract, which was validly entered into, must be enforced as written. We therefore have no choice but to reverse the verdict in favor of Lucas and remand for entry of judgment in favor of the Warners on their complaint. Likewise, we necessarily affirm the judgment in favor of the Warners on Lucas' complaint.

Lucas cross-appeals arguing the trial court erred in denying him on substantive grounds leave to file an amended answer and counterclaim asserting the affirmative defenses of commercial frustration and the doctrine of impossibility. While it is true that at any time prior to a final judgment, amendments may be allowed on just and reasonable grounds (see Ill. Rev. Stat. 1987, ch. 110, par. 2—616(a)), the court need not allow an amendment which accomplishes nothing (see *Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 281-82, 193 N.E.2d 833, 840). (See also *Cvengros v. Liquid Carbonic Corp.* (1981), 99 Ill. App. 3d 376, 379, 425 N.E.2d 1050, 1053.) Simply stated, neither the doctrine of impossibility nor commercial frustration is an applicable defense in this instance. Both defenses are extreme exceptions to the fundamental rules that a validly entered contract is to be enforced as written, and as such, are not to be applied liberally. (See *Smith v. Roberts* (1977), 54 Ill. App. 3d 910, 913, 370 N.E.2d 271, 273; *Olson v. Carbonara* (1959), 21 Ill. App. 2d 69, 71-72, 157 N.E.2d 273, 275.) More importantly, however, not only did Lucas receive the value of the Warners' performance in that he received dividends and voting rights on the stock for two years but also the failure of a corporation is a reasonably foreseeable possibility. (See *Olson*, 21 Ill. App. 2d at 72, 157 N.E.2d at 275-76.) The buying and selling of stock for investment purposes by nature carries much risk. An agreement to buy or sell such stock cannot be avoided simply because that risk is realized. As one court stated: "Changing and shifting markets and prices from multitudinous causes is endemic to the economy in which we live. Market forecasts by supposed experts are sometimes right,

often wrong, and usually mixed. If changed prices, standing alone, constitute a frustrating event sufficient to excuse performance of a contract, then the law binding contractual parties to their agreements is no more." (*Northern Illinois Gas Co. v. Energy Cooperative, Inc.* (1984), 122 Ill. App. 3d 940, 952, 461 N.E.2d 1049, 1059.) We also note that although worthless, the subject matter of the contract here, the shares of stock in the bank, still are in existence. We therefore find no abuse of the trial court's discretion in denying Lucas' motion to amend his answer and counterclaim.

For the aforementioned reasons, we reverse the judgment of the circuit court of Montgomery County in favor of Lucas on the Warners' complaint and remand for entry of judgment in favor of the Warners, and we affirm the denial of Lucas' motion to amend and affirm the judgment in favor of the Warners on Lucas' complaint.

Reversed and remanded in part; affirmed in part.

CHAPMAN and HOWERTON, JJ., concur.